Good morning, your honors. Thomas Boyd here on behalf of the appellants Steve Papademos and Chris Kanios. We are requesting reversal of the district court's judgment and remand with instructions to enter judgment in the appellant's favor. In the late 1990s and early 2000s, Mr. Papademos personally and the trustee for Dr. Kanios 401k plan made several loans to PCI. It is undisputed that those loans were made in good faith pursuant to standard promissory notes with customary terms and with absolutely no knowledge whatsoever of Tom Petter's fraud. When you mean customary terms, you mean ones that some of them had very high interest rates. These are also up to 48%, right? I believe that's an accurate statement, but those are still customary for these kinds of short-term loans. 48%? You surely didn't have evidence to say 48%? Yes, there is, your honor. There's evidence in the record from an expert, yes, your honor. And apart from that, the question is not whether or not there may be a high interest rate. The question is whether it was reasonable versus permissible. There's no question that it was reasonable and appropriate under these circumstances, and there's no law to indicate it was unlawful or impermissible. So both the record and the law support these terms as customary and standard for these kinds of short-term loans. And one thing I've always wondered about these cases, pardon me, but there's never been any argument that somebody's just entitled to, but you claim that all the interest that was paid is always reasonable, right? Certainly, under the statute, because we're talking about reasonably equivalent value, and here there's absolute reasonable equivalent value. It's a dollar-for-dollar set-off for what is owed by the debtor. The debtor owed principal and interest under the note and repaid it on an absolutely equally reasonable note. I was just focusing on the interest. I was focusing on the interest, but I get it. You have an all-or-nothing position. Proceed. Yes, your honor. Years later, long after, in hindsight, not addressing the situation at the time, which is what's required under the law, rather than evaluating the notes for the reasonableness and enforceability at the time of the transactions, but instead years later, after the loans had been repaid and Petter's schemes came to light, Mr. Pomodemos and Dr. Kanyos were dragged into this very complex and prolonged litigation. They now face judgments not only for the interest that was paid, but also double that in terms of statutory interest. Even though they had nothing to do with the fraud, they acted in good faith at all times, and under Minnesota law, they are entitled to an absolute defense for a reasonable equivalent value. Now the trustee, of course, contends, and the district court held, the promissory notes are void as a matter of public policy. Again, that was a determination made based on hindsight. More importantly, that was a determination based essentially on the Ponzi scheme presumption. And I say essentially, I believe the courts, excuse me, your honor, I believe the courts already recognize that that's effectively what happened here. I have a question about the hindsight portion of your argument. When is it not hindsight? Is eight years hindsight, but one year is not, or what is hindsight? Hindsight is looking at it apart from the time the transaction took place. So at the very moment, at the moment, and you would agree that at the moment, regardless of what your clients knew or understood, do you dispute that it was not a legitimate transaction? That it was part of the Ponzi scheme? A fraud? Let's put aside the word Ponzi because that gets caught up in the transaction. The only way I can answer it is it was a transaction with someone who was subsequently determined to have engaged in a Ponzi scheme, a fraudster. Whether or not it was actually part of the Ponzi scheme, whether or not we were repaid with Ponzi money, that's a disputed issue. But that is irrelevant as a matter of law for two reasons. First, again, you look at it at the time of the transaction, not with the benefit of hindsight. And that's established law. Secondly, also established law in Minnesota is when you have fraud by one party, but the party seeking to enforce the agreement is innocent and had no involvement in that fraud whatsoever. The contract is enforceable. That's as to your client and PCI? Yes, that's correct. But here we're talking about standing in the shoes of a credit. And that is a false proposition advanced by the trustee. There is no law to support that, and they've cited no case law that actually supports that proposition. As creditors, their claims are against PCI. Their claims are not against an innocent third party who acted in good faith and entered into a lawful series of notes. There is no law allowing those creditors to come against the third party. Their claim is against PCI. And if PCI was collaborating with another party, if, for example, my clients were not then maybe they'd have an argument, maybe they wouldn't. But they don't have a right to come against my clients who acted in good faith and who gave reasonably equivalent value. When you say they, you mean the creditors? Dr. Kanyos and Mr. Papademos. You said they don't have a right to come after your clients. The creditors and the trustee purporting to stand in the creditor's shoes. Have I responded, Your Honor? Would you agree if it had been a 120% interest rate? I can't resist this, you can tell. I would disagree, Your Honor. If it's been a 120% interest rate, would that alert you that it wasn't reasonably equivalent value? Well, it wouldn't alert my clients who are a county prosecutor and an OBGYN doctor. Yeah, but they do a lot of investing, Counsel. No, they don't. You sure? They did do a lot of- I thought that was in the record here. I think you're, you may be thinking of the last case. No, no, I'm thinking of this case. Okay. Again, our clients' professions are lawyer- Yeah, I got that. Did a lot of due diligence here. There are a lot of people who did a lot of due diligence and weren't aware of this fraud. And that's really the key here, looking at Minnesota law. Not only was there an awareness of fraud, and there was not in our case, but was there active participation? That's clear under Minnesota law. In order to void a contract for fraud, you need more than just fraud by one party. You need fraud, active participation by the party seeking to enforce it. With regard to your question about interest, I come back with the same response. It's always going to be reasonably equivalent value because it offsets the debt completely, dollar for dollar. And there's nothing under Minnesota law that makes these interest rates impermissible or inappropriate. So there would not have been a reason, whether it's a red flag or whatever word you might, but again, that's not our case because good faith is undisputed. I've already emphasized that the trustee is wrong as a matter of fundamental Minnesota law. They have misconstrued the Minnesota Supreme Court's decision in Finn. The portions that they've cited, to quote Judge Loken, are table setting. They're portions of the decision where Justice Strauss was citing to the federal jurisprudence. He set it up as a straw man and then rejected it thoroughly. Is it your position that Finn has actually decided this question when you've got transfers? Let's assume for purposes of this question that transfer by transfer was proven to be a part of the scheme and fraudulent. In your view, did Finn decide this case? It did. It did, Your Honor. And I say that for two reasons, if I may. First of all, bear in mind that Finn involved two sets of cases or claims by the receiver. One against Alliance Bank and one set against the Respondent's Bank. The procedural disposition of the Alliance Bank cases was summary judgment. So you had a record involving where the payments came and what the loans participation were and so forth. With the Respondent's Bank's case, that was decided on the pleadings in a motion to dismiss. And there, the allegations were simply that there was a Ponzi scheme that was ongoing. The court held that that failed to state a cause of action. And the court, again, in Minnesota, it's a very liberal pleading standard. The court did not allow for further pleading to say or to allege, well, it was a Ponzi scheme, to continue the scheme. The court denied the allegations, the very general allegations, as failing to state a claim across the board. So that was evidence that the court was declining to adopt the Ponzi rule, is what I would say it is. It's a Ponzi rule that when you have a Ponzi scheme in place and one of the parties to the contract is a Ponzi schemer, then it's void as a matter of law. And the court rejected that. But that overlooks, though, the transfer-by-transfer analysis, right? To see whether, in fact, even within a scheme, I mean, call it a Ponzi scheme, call it just a fraudster scheme, to look to see which transfers really are for legitimate rent and taxes and all of that sort of stuff. You start out in a good, legitimate business, and then it turns bad, and somewhere in the middle it turns completely into a fraudster. But there's a mix. Your point, Your Honor, transfer-by-transfer analysis actually further dispels the idea that Finn adopted any kind of Ponzi rule. A transfer-by-transfer analysis looks at the parties to the agreement, looks at the terms of the agreement and the circumstances. It just looks at the transaction. So whether one party is a Ponzi schemer or not is irrelevant. Right. Whether it's fraudulent. Whether it's fraudulent. Right. And whether both parties are participating in the fraud under Minnesota law. And that's where you differ. You say both have to be. Not only do I differ with the trustee, but in fact, they cannot demonstrate anything other than that under the law. Minnesota has only adopted two exceptions or two circumstances where you can void a contract as against public policy. And the fraud circumstance requires more than just fraud by a Ponzi schemer. It requires active participation by the other party. And Finn declined to expand Minnesota law to add a third circumstance. Finn declined to adopt a rule that said whenever you're dealing with a Ponzi schemer or a Ponzi scheme or being paid with Ponzi scheme money, then it's void. Finn categorically rejected that. I'm already into my rebuttal time, if I may reserve that. Thank you, Your Honors. Thank you. Ms. Forsythe. Good morning, Your Honors. May it please the Court. I'd like first, Judge Loken, to address your question about the legal enforceability at the time the contracts were made. Nothing in Minnesota law suggests that these contracts were legally enforceable at the time they were made. Rather, a longstanding Minnesota case says that contracts that are used to defraud a third party are void. Not in this context. The general... There aren't very many of those cases, and they're very fact-specific, and they don't, in my... I haven't read them all, but they don't resemble this case. There aren't very many, and thank goodness. What's the closest case, Counsel? So if you take a look at George Ben's and Son's, that's a case that appellants like because the secondary... The second-in-time contract was actually legally enforceable. And say the name of it again. I'm looking at... George Ben's. Okay, and it's not cited by the district court, is it? I don't think. It's not. It's a Minnesota case from 1940. Okay, great. Okay, go ahead. And... Okay, tell us how it's close to this one. Well, in that case, there were two friends who made an illegal contract to sell furniture between them to keep the property away from one of the friend's wives in a divorce. And the court said that that contract was illegal and void. It didn't say, only upon discovery... And what... Based on... In what... In what litigation? As between the parties? Because it defrauded the wife. That contract was not specifically at issue in that case, because they were talking about the second-in-time contract, which was enforceable. So we're talking DICTA, then? We're talking a very clear... Yes. I haven't heard anything that wasn't DICTA in your description. And then if we take the State v. Tower case, a Minnesota case from 1929, in which a county board was required to publish its financial statements in a newspaper and to take bids to do that publication. The newspapers in town colluded under contract to have one newspaper put up a bid at the maximum price, and then they would share in the profits. And the court refused to force the county to engage in that activity, because that contract was void, as a fraud on a third party. And it was void at the time it was made, just as these... It sounds like it was void under federal antitrust law. It was. Well, then that's quite a different situation. Was it an antitrust case, either Minnesota or federal? Yes. It was an anti-competition case. It was up on a writ of mandamus. There has not been a court in Minnesota that has decided a case on these exact facts, because we don't have many Ponzi scheme cases in Minnesota, luckily. Just give me one where an apparently valid, I would almost say routine, promissory note in an investment transaction was even hinted at being void at its inception. Well, it's not a Minnesota case, but in Jan V. Brown, it was these exact facts. The Fifth Circuit looked at the Texas Uniform Fraudulent Transfers Act, and looked at the Allen Stanford Ponzi scheme, and said that those investment contracts were void. At the time they were made, they were void, because they defrauded a third party. Did Finn reject that case? Is it... Are you sure? Let's make sure we're careful about what Finn did. Finn said that in order to prove that a particular contract was associated with a Ponzi scheme, you had to make that proof on the facts of that particular transfer. It said nothing about what you do thereafter, what the law says about what happens to that contract once that's proven. In light of Finn, once Finn was decided, Ted Martins, who was our expert from PricewaterhouseCoopers and his dozens of team members who had worked on this case for seven years, went back and they did the work to do that transaction-by-transaction analysis. They combed through tens of millions of records, and they looked at each specific transfer from appellants into PCI, and from PCI back to appellants, and looked at the economic activity that was reflected in bank data, that was reflected in PCI financial documents, all these registers that Deanna Coleman kept meticulous records of so that she could keep the Ponzi scheme going, and Ted Martins looked at all that activity. It's all hindsight. Because it was a fraud. You have to look at... If the contract's void, it's got to be ab initio, unenforceable by anybody against anybody. Otherwise, it may be voidable in some circumstances. But this notion, this void contract is being tossed around just unbelievably, in my experience. And appellants have apparently been successful in their attempt to make Finn sound broader than it is, and to make the district court's order sound broader than it is. No, they haven't. They haven't. They probably haven't read it as literally as I would. Well, so, okay, Your Honor, can you repeat what you, your question that you just had? I have a great answer for it. Oh, I thought I was just pontificating. I didn't know I had a question. Let me ask you a question. Yeah. As I understand what the district court did, they did, Polsky, I think is the name, they did show up with somebody who said these interest rates were all reasonable. And that goes to good faith. Wait, let me finish this. Sorry. Yeah. No, no, no. You and I are on the same wavelength. But I understand you didn't controvert that with any other expert, right, of any kind. Because it was unnecessary. Because we stipulated. But the answer is no, you didn't. Correct. Okay. So, and that's exactly what the district court says. And so the district court then blows off looking at the interest rate at all, right? So you're all or nothing on interest too, right? And what an all or nothing approach is, you're either going to win it all or lose it all, the interest. Well, yes. Yes. Okay. Thank you. Yes. And so I do think that that distinction. Because you're saving summary judgment. Or maybe, or are you saying it's irrelevant even if we reverse the summary judgment? Oh, this, I mean, the definition of reasonably equivalent value is critical to this case. The interpretation that this court makes on what MUFTA says about reasonably equivalent value and our ability to recover for victims of a fraud is absolutely critical to this case. So there is no dispute that we proved that each and every one of these transactions was procured by and paid from the fraud. That is beyond dispute. And so the real question is, what does it mean legally? And what it means is that each and every one of those contracts and the payments they're on was void. And the interest payments above principle were not for reasonably equivalent value. The basis for in furtherance of fraud in a 1997 promissory note? Sorry, what was that? One of these investors, yeah, it was Papademos, 1997 was the first clawback you're getting. And what was fraudulent about that promissory note and repayment? As Deanna Coleman testified, she called, she remembered calling Steve Papademos when they needed money and telling him about a fake deal. She said her job. You told him, I've got a fake deal for you to invest in? No, she told him that she had a real deal. And the paper... You lied to him or she's lying after the fact for obvious... She was... Operation reason. There is no doubt about it. She was absolutely lying. And she was excellent at doing so for 15 years. She kept this Ponzi scheme going. Wait a minute, 1997, what's the obvious lie? That Steve Papademos would be funding a real inventory transaction. He believed, his good faith argument rests on his idea that he was investing in very And he would be funding the flow. Some of them were legitimate, at least face painting. Not a single one of Steve Papademos or Chris Kanyos' investments was in a legitimate inventory transaction. That is proven beyond dispute. It is critically, that's what Finn requires. Finn says, show me transaction by transaction, whether this was part of the fraud or not. In Finn, there was a company, the company in Finn... No, you're well. You're not right about that, in my view. Because a legitimate business that is looking to expand, needs more investors to expand its legitimate transactions, may or may not make misrepresentations in the sense of not specific linkage. Sure. The lure is the same, so to speak, but not every lure has a fish chasing it. Sure. And so fraudulent inducement, things like that. That would be an action between the parties. It's not a misrepresentation that would affect the enforceability of the note or the subsequent repayment. So appellants cite numerous cases. What's wrong? Why isn't that right? Because these contracts were the tool of the fraud. The reason that no one discovered the fraud at the time that the contracts were made is because the notes reflected a real transaction when undergirding that was an absolute fraud. And so the reason they couldn't be... That's a nice phrase, but I mean... And it also happens to be true. Back when I was practicing, we had bank clients and there was check-kiting periodically. And every banker knew you don't want to be the last bank in the kite. That's right. And that didn't mean that they got to claw back from the earlier banks that survived that penalty. So the Minnesota Uniform Fraudulent Transfers Act gives the trustee that power here. And it gives him the power to, on behalf of victims, not have to pay... Not if there was reasonably equivalent value and good faith. And one of the problems with appellants' reading of the law and their view of the law is that their view of the law renders reasonably equivalent value? No. There is no... He even said it. Counsel just said it. He said... Counsel, there has to be an antecedent debt. And there's not. Talking about whether the antecedent debt, which is undisputable here, I believe. That's not true. Wait. They say that again and again. Weren't promissory notes from Papademos that were being repaid? Not that reflected a real transaction. Not that weren't used as a tool of a fraud. But that's... You're begging... You know, that's just question begging. Counsel just said that there's always going to be reasonably equivalent value. That's a quote. Where there's good faith. On the facts of this case, there's always going to be reasonably equivalent value. Why have that... Why have that term at all, then? Why have that as an element of his affirmative defense, if it means nothing beyond good faith? Well, it could mean the interest rate was way too much, because reasonable to me means a reasonable interest rate, a reasonable return. So Your Honor, you're talking about the Corazella line of cases that tries to reconstruct... It's layering a fiction on top of a fiction to say, okay, let's reconstruct this and pretend that what they were defrauding this party into believing was going on was actually going on, and then let's bring in experts to help us reconstruct that fiction. Like your Pricewaterhouse Group, right? That's what your auditors and accountants do. Sure. I'm not saying it can't be done. I'm saying the law doesn't require it to be done, and Minnesota law doesn't require it to be done here. I'm saying that longstanding Minnesota law says that as a matter of public policy, contracts that are used to defraud a third party are void. And in its applicability to these facts, that law stands, and it applies perfectly, and Finn does nothing to change it. Finn says that the proof you use to get to that concept must happen on a transfer by transfer basis, but that once you're in the law... It can't be simply based on preferences like bankruptcy law. You agree Finn says that? Correct. Now, the district court here says invokes bankruptcy law two or three times. Isn't that part of it wrong where the district court invokes preferences in bankruptcy law when, boy, the Finn opinion says we're not doing bankruptcy here under the Uniform Act? So there's no doubt that this would be easier if there were a Ponzi statute. If there were some law we could point to that specifically related to how recovery works in a Ponzi scheme situation. But it's such a unique set of circumstances, and this is the tool that is used. And it's not perfect on its face, in part because it's typically used in a bankruptcy setting. But Jan V. V. Brown, Sender V. Simon, other courts that have looked... Federal courts of appeals that have looked at this have said, these contracts are void because as a matter of public policy, they are defrauding a third party. We as a society... So appellants cite all these cases in which they recognize, they're willing to concede that if there are illegal provisions within a contract, those are void. So how is that different from the contract itself being used as a tool of a fraud and being void? There's no distinction, and they can't point to one, and they don't point to one. And what the Minnesota case law says is that in those instances, those contracts are void. The way that we order ourselves, and this is why the George Benz and Sons case does an anti-competitive case, there they say, as a matter of public policy, we don't want there to be anti-competitive behavior that harms the public. It's not a stretch to say that we as a society believe that as a matter of public policy, we should not affirm fraud on the public, which is what these contracts did. They did it at the time that they were made. It's absolutely affirming fraud. We're sorting out... Who gets it? Who gets what can be... Who gets what, when, where, and how? And as Jan Vivi-Brown said, to affirm these contracts would be to require the victims to pay a profit to the earlier in time investors, because the entity itself had no money. That reminds me of a question I was going to ask you. Why is it that you didn't go after the principal as well if these contracts were void? Your Honor, because... Didn't want to be unfair, right? Nope. The good faith... Their good faith defense would have barred us from getting the principal. Why? Why? Why? I thought this was an all or nothing case. It's a void contract. They would have had a claim in the bankruptcy case. They would have become a creditor. Jan Vivi-Brown talks about that. Well, your trustee should like that. And maybe we should have. That doesn't change... How do you distinguish, based on your legal argument, the principal from the interest? I don't. That's just an issue. So it's by the grace of the trustee God that they aren't subject to principal clawback as well? No. As a matter of administrative ease, we would have turned them from a net winner to a net loser and they would have had a claim. If the contract... I don't understand if these are... If you really believe this is a void contract... Right. They would have an equitable claim. I don't understand why there's any hesitation to turn them into losers. They would have an equitable... Or fraudsters. They would have an equitable claim to the amount that they paid in. Yeah, but they wouldn't get 100 cents on the dollar unless you've bought back enough from everybody. And in the grand scheme of going after hundreds upon hundreds of net winners and trying to deliver those... Well, that's not illegal. You answered my question. Mr. Boyd? Thank you, Your Honor. The trustees' council, I think, encapsulated the trustees' argument. It would be nicer if there was a Ponzi statute. There isn't. If there was a Ponzi statute, then that would be an expression of Minnesota policy. Instead, what we have here from the trustee is the trustees' expression of its own policy coming from federal law. It is completely untethered from and unsupported by Minnesota law. And that's demonstrated by counsel's reliance on cases like George Ben's and State v. Tower. In those cases, it was collusion by both parties, both parties to the agreement, to defraud a third party. We don't have that here. And Minnesota does not otherwise recognize a basis to void a contract for fraud where only one party is engaged in that fraud. Similarly, their reliance on Janvey. They rely on the Fifth Circuit decision in Janvey and ignore the subsequent decision by the Supreme Court of Texas, which rejected that view and instead adopted, expressly fell in line with Finn. This was decided, the Janvey case by the Supreme Court of Texas, was decided subsequently or subsequent to Finn. But wasn't there a difference between services provided and pure interest, which I think does open up a whole other kind of line of questions. It's not here. It's not what we have here. I would concede that in Janvey, they were dealing with advertising services. But whether it's goods or services, there's no difference with financial services and lending. We're talking about varying degrees of elements of an enterprise, and we're talking about an innocent party who is being duped by a Ponzi schemer or some other kind of fraudster. So just as the Finn analysis was adopted by Janvey for that purpose, Finn and Janvey apply across the board to reject this proposition that there has to be a particular rule for Ponzi schemes that invalidate contracts, even as to good faith, innocent parties who gave for reasonably equivalent value. So what does the reasonably equivalent value, what work does that do in response to opposing counsel's description of your argument that once you've got good faith, there's really not much more to talk about? What work is reasonably equivalent value doing here? Well, in our case, reasonably equivalent value is established by the enforceable notes. To the extent that they lacked a signature or there was some other failure that made the contract unenforceable for a legal reason, do you understand what I'm saying? If, for example, we were acting in good faith, but the note wasn't signed by an authorized party, then it would not be reasonably equivalent value. But here, we've got a standard note properly entered into, and at the time it was entirely enforceable and there's no basis to avoid it after the fact because one party was involved in fraud. I realize I'm out of time, and if I may just briefly, there was quite a bit of discussion and an assertion by the trustee that it's undisputed that all of these payments to my clients were from Ponzi scheme money. That is very much disputed. They rely on Ms. Coleman, who is a habitual fraudster, a liar, etc. But even the judge, the district judge, recognized that Coleman, quote, could not testify as  with regard to her off-the-cuff reference that if I needed some money, I might have called Steve. I mean, that is as incredible as any testimony, and certainly a jury could reject that as beyond cavalier, just another thing stated by a fraudster. As to their reliance on Martin's, that is in an expert report, and he recognized that there was commingling going on. And he could not provide affirmative evidence that payments were made with Ponzi funds. He said the opposite. He said, I couldn't find any evidence showing that there was proper payments going on. Like any expert, he should be crossed if, in fact, we get to that point. We've got an absolute defense. The reasonably equivalent value defense gives us a right to judgment as a matter of law. But if, for some reason, the actual fraud case were to be tried, those are entirely disputed issues. Thank you, Your Honors. Thank you both, counsel. The case has been well-argued, thoroughly briefed. Difficult issues. We'll take it under advisement. Please call the last case for argument. Sotkang versus City of Burnsville et al.